UNITED STATES DISTRICT COURT
DISTRICT OF MAINE

LORI J.,                                )
                                        )
    Plaintiff                           )
                                        )
v.                                      )   1:18-cv-00476-DBH
                                        )
ANDREW M. SAUL, Commissioner,           )
Social Security Administration,         )
                                        )
    Defendant                           )

# REPORT AND RECOMMENDED DECISION

On Plaintiff's application for disability insurance benefits under Title II of the Social Security Act, Defendant, the Social Security Administration Commissioner, found that Plaintiff has severe impairments, but retains the functional capacity to perform past relevant work (mail sorting). Defendant, therefore, denied Plaintiff's request for disability benefits. Plaintiff filed this action to obtain judicial review of Defendant's final administrative decision pursuant to 42 U.S.C. § 405(g).

Following a review of the record, and after consideration of the parties' arguments, I recommend the Court vacate the administrative decision and remand for further proceedings.

## THE ADMINISTRATIVE FINDINGS

The Commissioner's final decision is the January 22, 2018 decision of the Administrative Law Judge. (ALJ Decision, ECF No. 7-3.)[1] The ALJ's decision tracks the

---

[1] Because the Appeals Council found no reason to review that decision (R. 1), Defendant's final decision is the ALJ's decision.

familiar five-step sequential evaluation process for analyzing social security disability claims, 20 C.F.R. §§ 404.1520, 416.920.

The ALJ found that Plaintiff has severe, but non-listing-level mental health impairments consisting of dysthymia, major depressive disorder, general anxiety disorder, and an unspecified neurocognitive disorder. The ALJ did not include personality disorder with dependent and obsessive traits and a "social anxiety disorder" as severe impairments, but the ALJ considered the longitudinal record of mental health diagnoses and treatment when formulating Plaintiff's RFC. (R. 120-121, 125-127.)

When considering the degree to which Plaintiff's medically determinable impairments impact Plaintiff's vocational capacity, the ALJ found Plaintiff's subjective report "partially consistent with and supported by the evidence of record," referencing diagnostic evidence of neurological deficits, low frustration tolerance, and frequent irritability. (R. 124, citing Exs. 7F, 13F.)

Based on her review of the record, the ALJ found Plaintiff to have the mental RFC for simple work, basic decisions, simple and routine changes, and supervisory and coworker interaction, but no public interaction. (R. 123.) The ALJ gave significant weight to the consultative examination report of Jonathan Freedman, Psy.D. (Ex. 2F), and the neuropsychological evaluation report of Anthony Podraza, M.S., Ph.D. (Ex. 13F). She also gave significant weight to the opinions of Disability Determination Services consultants David Houston, Ph.D. (Ex. 1A), and Leigh Haskell, Ph.D. (Ex. 3A), concluding that their views were supported by the record and that the more recent evidence did not contradict their findings. (R. 127, 129.) Ultimately, the ALJ found Plaintiff could perform past

relevant work as a mail sorter and determined Plaintiff was not disabled. (R. 129-130.) [2]

## STANDARD OF REVIEW

A court must affirm the administrative decision provided the decision is based on the correct legal standards and is supported by substantial evidence, even if the record contains evidence capable of supporting an alternative outcome. *Manso-Pizarro v. Sec'y of HHS*, 76 F.3d 15, 16 (1st Cir. 1996) (per curiam); *Rodriguez Pagan v. Sec'y of HHS*, 819 F.2d 1, 3 (1st Cir. 1987). Substantial evidence is evidence that a reasonable mind might accept as adequate to support a finding. *Richardson v. Perales,* 402 U.S. 389, 401 (1971); *Rodriguez v. Sec'y of HHS*, 647 F.2d 218, 222 (1st Cir. 1981). "The ALJ's findings of fact are conclusive when supported by substantial evidence, but they are not conclusive when derived by ignoring evidence, misapplying the law, or judging matters entrusted to experts." *Nguyen v. Chater*, 172 F.3d 31, 35 (1st Cir. 1999).

## DISCUSSION

Plaintiff argues the ALJ erred at step 2 because the ALJ did not properly assess as severe Plaintiff's social anxiety disorder and personality disorder. (Statement of Errors at 1-6.) Plaintiff further argues the ALJ erred in the RFC finding by failing to weigh properly the expert opinion evidence, and by failing to recognize the need for a limitation on Plaintiff's ability to interact with supervisors and coworkers. (*Id.* at 10-18.) Plaintiff also observes that the record of mental health treatment expanded significantly following the Disability Determination Services review and that the ALJ, therefore, should not have

---

[2] Plaintiff was 62 years of age when the ALJ issued her decision. Plaintiff's disability insurance extends to June 30, 2020.

3

given weight to the opinions of the Disability Determination Services consultative experts.

The Disability Determination Services consultants considered Plaintiff's records as of September 2015 (initial) and March 2016 (reconsideration). In the initial review, performed with the benefit of a psychiatric consultative examination by Dr. Freedman (Ex. 2F), Dr. Houston deemed Plaintiff to have a severe affective disorder with moderate difficulties maintaining concentration, persistence, and pace, but with the ability to understand, remember, and carry out simple instructions and tasks, and adapt to simple, routine changes. (Ex. 1A, R. 89, 91-93.) Upon reconsideration, Dr. Haskell identified affective disorder and anxiety-related disorder as severe, with moderate difficulty maintaining social functioning and maintaining concentration, persistence, and pace. (Ex. 3A, R. 104.) Dr. Haskell noted the assessment of Dr. Freedman that Plaintiff's ability to understand, follow instructions, and remember information were suitable for employment at simple tasks (R. 107-108), and assessed a marked social restriction that precludes work with the public, as well as moderate impairment as to supervisors and coworkers. Dr. Haskell concluded Plaintiff's ability to interact with coworkers and supervisors was "adequate," but opined that she would do better with a small group or on independent work. (R. 108.) Concerning concentration, persistence, and pace, Dr. Haskell considered Plaintiff able to adapt to simple, routine changes and make basic decisions. (R. 109.)

Dr. Freedman's consultative examination record includes Plaintiff's report of anxiety, depression, learning disability, panic attacks and memory loss. (Ex. 2F, R. 335.) Dr. Freedman found that Plaintiff had low average memory processes, that Plaintiff lost the thread of the conversation while talking, and that she was of low average intelligence.

4

(*Id.*) He noted Plaintiff was not actively in counseling, but she was taking an anti-depressant; Plaintiff reported that she had established a circle of friends at work, but also cried at work due to frustration with her performance. (R. 336.) Dr. Freedman determined that the reliable test results were commensurate with others who "are able to perform semi-skilled labor," and that Plaintiff's sensitivity to criticism was "not particularly high." (R. 337.) Dr. Freedman did not discern any particular concern that would prevent employment; however, he observed Plaintiff's crying based on "certain situations" had undermined her most recent employment. (*Id.*)

Following the Disability Determination Services assessment, Plaintiff submitted to a neuropsychological evaluation in June 2016. The history report reflected that she had recently failed an attempt to work as a deli manager after a prior unsuccessful attempt to work for an insurance company following 48 years of other administrative work. (Ex. 7F, R. 373.) The examiner, Bonnie Creech, Ph.D., found Plaintiff to have problems with mental flexibility, psychomotor speed, verbal memory, visuospatial skills, and motor functioning; suggested that Plaintiff should postpone a return to work pending treatment given the demoralizing effect of unsuccessful work attempts; and suggested a return to work could follow medication management if cleared by a neurologist. (R. 375-76.) Dr. Creech also found Plaintiff to have an "unspecified neurocognitive disorder" and "social anxiety disorder" (rather than generalized anxiety disorder). She recommended further evaluation by a neurologist. (R. 375.)

In March 2017, Plaintiff's primary care provider, David Hallbert, M.D., assessed Plaintiff as markedly limited even with respect to simple work and markedly limited with

5

respect to interaction with supervisors. (Ex. 11F.) In support of the assessment, Dr. Hallbert cited the "neuropsych and neurology eval," presumably referencing Dr. Creech's findings. (R. 429.)

Plaintiff obtained a further neuropsychological evaluation from Anthony Podraza, M.S., Ph.D., upon referral for treatment progress and recommendation. (Ex. 13F.) As of the date of the evaluation, Plaintiff was 62 years of age. Dr. Podraza reviewed records and interviewed and assessed Plaintiff. (R. 464.) As part of his evaluation, he noted the death of Plaintiff's second husband in June 2016 (contemporaneous to the Creech evaluation). (R. 465.) Plaintiff reported significant decline in matters related to memory and an increase in depression and anxiety, with an extreme fear of early onset dementia given her mother's experience with dementia.[3] Dr. Podraza reported new examination findings of "deficits on measures of visuospatial construction, visuospatial memory, attention/concentration, and divided attention and psychomotor speed … suggestive of right cerebral dysfunction," but he also noted an improvement in performance relative to Dr. Creech's findings, and suggested her husband's death around the time of the prior testing as a potential factor in the earlier test results. (R. 469.) Dr. Podraza diagnosed Plaintiff to have mild neurocognitive disorder unspecified, major depressive disorder recurrent moderate, generalized anxiety disorder, social anxiety disorder, and personality disorder with dependent and obsessive traits. (R. 470.) Among other recommendations, he "urged [Plaintiff] to apply for disability given her significant attentional problems, information

---

[3] Plaintiff does not meet the criteria for dementia. R. 470.

processing problems, and depression." (R. 471.)

### A. Step 2

At step 2 of the sequential evaluation process, a claimant must demonstrate the existence of impairments that are "severe" from a vocational perspective, and that the impairments meet the durational requirement of the Social Security Act. 20 C.F.R. § 416.920(a)(4)(ii). The step 2 requirement of "severe" impairment imposes a *de minimis* burden, designed merely to screen groundless claims. *McDonald v. Sec'y of HHS,* 795 F.2d 1118, 1123 (1st Cir. 1986). An impairment or combination of impairments is not severe when the medical evidence "establishes only a slight abnormality or combination of slight abnormalities which would have no more than a minimal effect on an individual's ability to work even if the individual's age, education, or work experience were specifically considered." *Id.* at 1124 (quoting Social Security Ruling 85–28). In other words, an impairment is severe if it has more than a minimal impact on the claimant's ability to perform basic work activities on a regular and continuing basis. *Id.* However, a diagnosis, standing alone, does not establish that the diagnosed impairment would have more than a minimal impact on the performance of work activity. *Dowell v. Colvin*, No. 2:13-cv-00246-JDL, 2014 WL 3784237, at *3 (D. Me. July 31, 2014). Moreover, even severe impairments may be rendered non-severe through the ameliorative influence of medication and other forms of treatment. *Parsons v. Astrue*, No. 1:08-cv-218-JAW, 2009 WL 166552, at *2 n.2, *aff'd*, 2009 WL 361193.

Following the Disability Determination Services assessment, Dr. Creech and Dr. Podraza found Plaintiff to have social anxiety disorder. Dr. Podraza also diagnosed a

personality disorder, evidently based on Plaintiff's performance on the MMPI-2. (R. 467-469.) In the step 2 discussion, the ALJ reasoned that the personality disorder is "managed medically, and should be amenable to proper control by adherence to recommended medical management and medication compliance." (R. 120.) The ALJ relied on the opinions of the Disability Determination Services consultants to support a finding that the impairments were not severe, even though the consultants did not consider the impairments in their review. (*Id.*) The ALJ did not mention social anxiety disorder at step 2, but the ALJ identified generalized anxiety disorder as severe and imposed an RFC that includes a social limitation.

When the record is viewed in its entirety, I am persuaded that the ALJ erred when she failed to find Plaintiff's social anxiety disorder to be a medically determinable impairment or to be a severe impairment. Given that the consultant upon whom the ALJ relied (Dr. Haskell) did not have the records of Drs. Creech and Podraza (who found Plaintiff to suffer from social anxiety disorder) to review because the records were generated after her opinion, the medical opinions of Drs. Creech and Podraza regarding the diagnosis of social anxiety disorder based on their findings are essentially uncontroverted. In other words, Dr. Creech's diagnosis of social anxiety disorder is not contradicted by a medical expert who reviewed Dr. Creech's findings. The record thus includes "medical signs" that demonstrate "the existence of a medically determinable [] mental impairment[] that could reasonably be expected to produce [Plaintiff's] symptoms." Social Security Ruling 96-7p, reprinted in *West's Social Security Reporting Service,* Rulings 1983-1991 (Supp. 2015) ("SSR 96-7p"), at 133; *see also* 20 C.F.R. § 404.1508. Furthermore, given

8

that Dr. Creech described Plaintiff as having "avoidance personality traits," and being "very tense and self-conscious in social groups" (R. 375), one cannot reasonably find (on this record) that the social anxiety disorder would have no more than a minimal impact on Plaintiff's performance of work activity.

The issue is whether remand is warranted as remand is only appropriate when the claimant can demonstrate that an omitted impairment imposes an additional restriction beyond those recognized in the Commissioner's RFC finding, and that the additional restriction is material to the ALJ's "not disabled" finding at step 4 or step 5. *Socobasin v. Astrue*, 882 F. Supp. 2d 137, 142 (D. Me. 2012) (citing *Bolduc v. Astrue*, No. 09–CV–220–B–W, 2010 WL 276280, at *4 n. 3 (D. Me. Jan. 19, 2010) ("[A]n error at Step 2 is uniformly considered harmless, and thus not to require remand, unless the plaintiff can demonstrate how the error would necessarily change the outcome of the plaintiff's claim.")). The question is thus whether the ALJ's RFC adequately addressed Plaintiff's social anxiety-related limitations.

**B. RFC Finding**

The ALJ placed the most weight on Dr. Haskell's RFC opinion. Dr. Haskell, in addition to assessing a marked social impairment vis-à-vis work with the public, assessed a moderate social impairment for interaction with supervisors and coworkers. Dr. Haskell determined that Plaintiff's ability to interact with coworkers and supervisors appeared to be "adequate," but opined that Plaintiff would do better with a small group or independent work. (R. 108.) The ALJ interpreted the record as supporting only mild social limitation. (R. 122.) She explained that "[o]bjective clinical observations revealed little evidence of

severe social limitation," noting, specifically, Plaintiff's ability to engage with her care providers. (R. 122, 125.) At the RFC stage, the ALJ determined that the mild social limitation precluded public interaction, but the ALJ found Plaintiff "can interact with supervisors and co-workers." (R. 129.)

While Dr. Haskell's opinion arguably supports the ALJ's conclusion regarding social interaction, Dr. Haskell did not consider the subsequent findings of Dr. Creech and some of the events (e.g., the death of Plaintiff's husband) that impacted the findings. There is, however, no rule that prevents an ALJ from relying on a consultant's evaluation even if subsequent medical evidence and findings might question the evaluation. "[T]he amount of weight that can properly be given the conclusions of non-testifying, non-examining physicians will vary with the circumstances, including the nature of the illness and the information provided the expert. In some cases, written reports submitted by non-testifying, non-examining physicians cannot alone constitute substantial evidence, although this is not an ironclad rule." *Rose v. Shalala*, 34 F.3d 13, 18 (1st Cir. 1994) (citations and internal quotation marks omitted)). This Court has observed:

> There is no hard and fast rule requiring renewed evaluation by a consulting expert every time a disability claimant experiences new medical events or obtains new diagnoses in the interval between the initial DDS consultant's RFC assessment and the date of the administrative hearing. Particularly where pain is concerned, an Administrative Law Judge has the unenviable duty to make a credibility determination, 20 C.F.R. §§ 404.1529(a), (c)(1), (c)(4), 416.929(a), (c)(1), (c)(4); SSR 96–7p, and the evidence contained in new medical records may, in some cases, simply dovetail with the credibility determination. Where the dividing line exists is difficult to determine and will depend on the particular facts of a case.

*Bachelder v. SSA Comm'r*, No. 1:09-CV-436-JAW, 2010 WL 2942689, at *6 (July 19,

10

2010), *report and recommendation adopted*, 2010 WL 3155151 (D. Me. Aug. 9, 2010).

In her report of March 1, 2016, Dr. Haskell determined that the record demonstrated Plaintiff had "normal social interaction skills and an adequate ability to engage with supervisors and coworkers," and found her interaction with coworkers and supervisors to be moderately limited. (R. 108.) The salient new evidence consists principally of the examination reports of Drs. Creech (Ex. 7F) and Podraza (Ex. 13F). In addition to her finding that Plaintiff has "avoidance personality traits," and is "very tense and self-conscious in social groups" (R. 375), Dr. Creech wrote, "it cannot be good for her to keep trying to work as this is causing her to be more depressed with each successive failure." (*Id.*) Dr. Podraza, who examined Plaintiff in July 2017, recommended that she continue psychotherapy "to address her depression and social anxiety disorder, as well as personality issues."[4] (R. 470.)

Given that Dr. Haskell recognized that Plaintiff's anxiety and depression were profound enough to restrict Plaintiff to no interaction with the public, and given that Plaintiff's significant social anxiety not only persisted following Dr. Haskell's examination, but was exacerbated by subsequent events (e.g., the death of Plaintiff's husband), I am persuaded that if Dr. Haskell had the benefit of the evaluations of Drs. Creech and Podraza, her opinion regarding Plaintiff's ability to interact with coworkers and supervisors likely would have been more favorable to Plaintiff. Insofar as the ALJ relied on Dr. Haskell to support her RFC finding (and at least in part to determine that

---

[4] Dr. Podraza also encouraged her "to apply for disability given her significant attentional problems, information processing problems, and depression." (R. 471.)

Plaintiff's social anxiety was not severe), the Step 2 error (i.e., failing to find social anxiety disorder to be a severe impairment) was not harmless. Remand, therefore, is appropriate.

## CONCLUSION

Based on the foregoing analysis, I recommend the Court vacate the administrative decision and remand the matter for further proceedings.

## **NOTICE**

A party may file objections to those specified portions of a magistrate judge's report or proposed findings or recommended decisions entered pursuant to 28 U.S.C. § 636(b)(1)(B) for which de novo review by the district court is sought, together with a supporting memorandum, within fourteen (14) days of being served with a copy thereof. A responsive memorandum and any request shall be filed within fourteen (14) days after the filing of the objection.

Failure to file a timely objection shall constitute a waiver of the right to de novo review by the district court and to appeal the district court's order.

/s/ John C. Nivison
U.S. Magistrate Judge

Dated this 4th day of September, 2019.